IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LAKWINDER SINGH,

                Petitioner,

        vs.

BEN CURRY,[1] Warden, Correctional
Training Facility, Soledad,

                Respondent.

No. 2:08-cv-00211-JKS

MEMORANDUM DECISION

Petitioner Lakwinder Singh, a state prisoner proceeding *pro se*, has filed a Petition for

Habeas Corpus relief under 28 U.S.C. § 2254.  Singh is presently in the custody of the California

Department of Corrections and Rehabilitation, incarcerated at the Correctional Training Facility,

Soledad.  Respondent has answered the Petition and Singh has replied.  Singh has also requested

an evidentiary hearing.

I.  BACKGROUND/PRIOR PROCEEDINGS

Following a jury trial Singh was convicted in the California Superior Court, Sutter

County, of one count each second-degree murder (California Penal Code § 190(a)) and personal

use and discharge of a firearm in committing the offense (California Penal Code §§ 12022.5,

12022.53).  Singh was sentenced to consecutive, indeterminate terms of 15 years to life on the

second-degree murder conviction and 25 years to life on the use of a firearm for an aggregate

---

[1] Ben Curry, Warden, Correctional Training Facility, Soledad, is substituted for D. K.
Sisto.  Fed. R. Civ. P. 25(d).

sentence of 40 years to life.  Singh was also sentenced to the upper term of 10 years for the gun use enhancement (California Penal Code § 12022.5(a)), which sentence was stayed under California Penal Code § 654.  Singh timely appealed his conviction and sentence to the California Court of Appeal, Third District, which affirmed his conviction and sentence in an unpublished, reasoned decision.[2]  The California Supreme Court summarily denied review without opinion or citation to authority on October 26, 2005.  On February 6, 2006, Singh filed a Petition for a Writ of Habeas Corpus in the Sutter County Court, which summarily denied his Petition for failure to establish a *prima facie* case for habeas relief, citing *In re Lawler*, 23 Cal 3d 190, 194.  Subsequent petitions for habeas corpus relief were summarily denied without opinion or citation to authority by the California Court of Appeal, Third District, and the California Supreme Court on August 10, 2006, and October 10, 2007, respectively.  Singh timely filed his Petition for relief in this Court on January 27, 2008.

## II.  GROUNDS RAISED/DEFENSES

Singh raises four grounds in his Petition:  (1) in instructing the jury, the trial court improperly modified CALJIC 5.50.1; (2) the trial court improperly denied his motion for a new trial or, in the alternative, a reduction of the conviction to voluntary manslaughter; (3) the trial court erred in imposing the stayed prison term for the gun use enhancement; and (4) ineffective assistance of trial counsel.  Respondent has not raised any affirmative defenses.[3]

---

[2] *People v. Singh*, 2005 WL 1995548 (August 19, 2005).

[3] *See* Rules—Section 2254 Cases, Rule 5(b).

III.  STANDARD OF REVIEW

Because the Petition was filed after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[5]  The holding must also be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[6]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[7]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court

---

[4] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[5] *Williams*, 529 U.S. at 412.

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Moses v. Payne*, 555 F.3d 742, 753–54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedents for purposes of § 2254(d)(1), the latter are not).

precedent must be objectively unreasonable, not just incorrect or erroneous.[8]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[9]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[10]

In applying this standard, this Court reviews the last reasoned decision by the state court,[11] which in this case was that of the California Court of Appeal.  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[12]

## IV.  DISCUSSION

<u>Ground1:  Modification of CALJIC 5.50.1.</u>

The trial court instructed the jury with CALJIC 5.50.1, which, over defendant's objection, the court modified by deleting the language shown as stricken:

> ~~Evidence has been presented that on prior occasions the alleged victim threatened or participated in an assault or threat of physical harm upon the defendant. Further,~~ [E]vidence has been presented that other persons known by the defendant

---

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[10] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[11] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[12] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

to be associated with the victim threatened or assaulted or participated in an assault or threat of physical harm upon the defendant.  If you find that this evidence is true, you may consider that evidence on the issues of whether the defendant actually and reasonably believed his life or physical safety was endangered at the time of the commission of the alleged crime.

In addition, a person whose life or safety has been previously threatened or assaulted by other persons known by the defendant to be associated with the victim is justified in acting more quickly and taking harsher measures for self protection from an assault by that person than would a person who has not received threats from or previously been assaulted by the same person or persons.

Singh argues that by deleting the reference to the prior assault by the victim upon him, the trial court denied the jury the opportunity to use the prior assault in assessing Singh's state of mind at the time of the shooting.  According to Singh, this prejudiced him because it rendered moot his state of mind, a key element in the defense.  The California Court of Appeal rejected Singh's arguments, holding:

A homicide defendant who asserts self-defense is entitled upon request to a pinpoint instruction on antecedent threats or antecedent assaults by the victim or third-parties associated with the victim, if there is evidence in the record to support such an instruction. (Citations omitted)

Citing cases from other jurisdictions (citations omitted) defendant argues that the victim's assault upon defendant immediately prior to the shooting qualifies as an antecedent assault.  Thus, he says, the deleted portion of the instruction was supported by the evidence.  We disagree.

The victim's attack upon defendant *immediately prior to the killing* does not qualify as an antecedent assault within the meaning of CALJIC No. 5.50.1.  In California, the cases establishing the right to a pinpoint instruction regarding antecedent threats or assaults, all involve prior threats or assaults made on occasions before, and separate from, the events underlying the charged offense. (Citation omitted.)  In such circumstances, a pinpoint instruction may be necessary or helpful to assist the jury in evaluating the significance of otherwise unrelated events in the past, and the effect these past events had on the reasonableness of the defendant's response to the victim's present conduct.

However, the same reasoning does not logically apply to the victim's assault upon defendant, which constituted an integral part of the events immediately preceding the fatal shooting. In a homicide case where a defendant claims self-defense based on threatening conduct by a victim, jurors do not need a special pinpoint instruction to understand the significance of the victim's assaultive conduct immediately prior to the killing.  The standard CALJIC self-defense instructions, which were given to the jury in this case, were sufficient to cover the topic.  (See CALJIC Nos. 5.12, 5.13, 5.15-5.17, 5.50-5.53.)

This is not a situation where after the victim attacked defendant, a significant amount of time elapsed and the victim then made threatening moves indicating he was going to attack defendant again.  Here, the victim beat defendant, was pulled off of him by Brower, was removed to a location approximately eight feet away, was not moving toward or speaking to defendant, and was not armed at the time of the shooting.  Under these circumstances, defendant could no longer entertain the belief that the victim constituted an *imminent* and *deadly* peril to him.  Thus, defendant's right to use deadly force in self-defense ended absent any further conduct by the victim creating a risk, or apparent risk, of death or great bodily injury.  (Citations omitted.)

Although previous threats or assaultive conduct by a defendant's victim may cause the defendant to be on heightened alert and to reasonably act more quickly to any act by the victim that reasonably appears to be calculated to carry out the threat (citation omitted), previous threats and assaults alone do not justify a deadly assault absent some overt act or physical demonstration by the victim.  (Citations omitted.)

Thus, the victim's attack upon defendant was not a prior assault within the meaning of CALJIC No. 5.50.1; it was the only assault by the victim that could have justified defendant's resort to selfdefense.[13]

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."[14]  The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the

---

[13] *Singh*, 2005 WL 1995548 at *3–5 (emphasis in the original).

[14] *Boyde v. California,* 494 U.S. 370, 380 (1990).

Fourteenth Amendment.[15]  In the absence of evidence to the contrary, this Court must also assume that the jury followed those instructions.[16]

It is well established that not only must the challenged instruction be erroneous but it must violate some constitutional right.  An allegedly erroneous instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.[17]  This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution, and that the category of infractions that violate "fundamental fairness" is very narrowly drawn.[18]  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation."[19]

It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[20]  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the

---

[15] *Francis v. Franklin*, 471 U.S. 307, 309 (1985).

[16] *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh,* 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *Francis*, 471 U.S. at 324 n.9.

[17] *Estelle*, 502 U.S. at 72

[18] *Id*. at 72-73.

[19] *Id*.

[20] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982) (federal court must accept that state courts correctly applied state laws); *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

challenged conviction, binds a federal court sitting in habeas corpus."[21]  This principle applied to

federal habeas review of state convictions long before AEDPA.[22]   A federal court errs if it

interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's

interpretation of the law.[23]  It does not matter that the state supreme court's statement of the law

was dictum if it is perfectly clear and unambiguous.[24]  A determination of state law by a state

intermediate appellate court is also binding in a federal habeas action.[25]  This is especially true

where, as in this case, the highest court in the state has denied review of the lower court's

decision.[26]

     In this case, the California Court of Appeal addressed the issue of the proper application

of a jury instruction under state law, which it decided against Singh.  This determination is

beyond the purview of this Court in a federal habeas proceeding.  As explained in the California

cases, California law distinguishes between two sources for possible fear when deadly force is

---

[21] *Bradshaw v. Richey,* 546 U.S. 74, 76, (2005); *see also West v. AT & T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[22] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law").

[23] *See Bradshaw*, 546 U.S. at 76–78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[24] *Id.* at 76.

[25] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[26] *Id.*; *see also West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 419 F.3d 1083, 1087 (9th Cir. 2005) (same).

used in what is arguably self-defense.  The first and most common source of fear arises when the acts or conduct of the victim immediately preceding the use of deadly force constitute the cause for the fear for one's safety, *i.e.*, suffer imminent death or serious bodily harm.  The second situation traces itself to where acts or conduct of the victim that causes a fear of loss of life or serious bodily harm occurred at some earlier time or place.  In this case, there was no evidence that the victim had done anything to Singh at an earlier time; the victim's violence occurred within minutes before the use of force and at the scene.  Under these circumstances it would be misleading to focus the jury's attention on earlier events at other locations.  Standard self-defense instructions not only permitted, but directed, the jury to consider contemporaneous events in determining whether Singh's actions were in self-defense.

Viewing CALJIC 5.50.1, as modified and given in this case, when coupled with the standard self-defense instructions, this Court cannot say that the California Court of Appeal ignored the fundamental principles established by *Boyde-Francis-Weeks-Estelle*, the most relevant Supreme Court precedents regarding jury instructions.[27]  In particular, Singh has not established that the jury was precluded from considering the assault upon him by the victim to the extent it was relevant under California law.  Nor has Singh rebutted the presumption that the jury followed the instructions in their totality.[28]  This Court cannot say that the decision of the California Court of Appeal in this case was contrary to, or involved an unreasonable application

---

[27] *See Abdul-Kabir v. Quarterman*, 550 U.S. 233, 258 (2007); *Moore v. Czerniak*, 574 F.3d 1092, 1100 (9th Cir. 2009).

[28] *Weeks*, 528 U.S. at 234; *Richardson,* 481 U.S. at 206; *Francis*, 471 U.S. at 324 n.9.

of the relevant Supreme Court decisions.[29]  That is, where explicit holdings of the Supreme Court

regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

'unreasonabl[y] appli[ed] clearly established Federal law.'"[30]  Singh is not entitled to relief under

his first ground.

Ground 2:  Denial of Motion for New Trial.

Singh filed a motion requesting a new trial or a reduction of the verdict to voluntary

manslaughter on the grounds that the second-degree murder verdict was contrary to the evidence.

Specifically, Singh contends that the victim was the aggressor, negating malice on the part of

Singh, who acted either on a basis of an imperfect delf-defense or in the heat of passion.  The

trial court denied the motion, and the California Court of Appeal rejected Singh's arguments,

holding:

> Defendant argues the evidence discloses that as a matter of law, he killed the
> victim under a heat of passion.  Accordingly, he asserts, the trial court abused its
> discretion in denying his motion seeking a new trial or a reduction of the second
> degree murder conviction to voluntary manslaughter (§ 1181, subd. 6).  We
> disagree.
>
> Section 1181, subdivision 6 "authorizes the trial court to exercise its independent
> judgment as to the sufficiency of the evidence to support the jury's verdict or
> finding, even to the extent of resolving conflicts in the evidence in a manner
> different from the jury's implicit findings.  It authorizes the trial court to reweigh
> the evidence. [Citation.] . . . . [¶]  When it reweighs the evidence, the trial court
> exercises broad discretion. [Citations.]  An appellate court does not have the same
> authority; in reviewing a trial court's discretion it is limited to deciding whether

---

[29] *Musladin*, 549 U.S. at 74; *see Kessee v. Mendoza-Powers*, 574 F.3d 675, 678 (9th Cir.
2009); *Moses*, 555 F.3d at 753–54 (explaining the difference between principles enunciated by
the Supreme Court that are directly applicable to the case and principles that must be modified in
order to be applied to the case; the former are clearly established precedents for purposes of §
2254(d)(1), the latter are not).

[30] *Musladin*, 549 U.S. at 77 (alterations by the Court); *see Wright*, 552 U.S. at 127.

there has been an abuse. [Citations.]  But when the trial court rules as a matter of law, appellate review is not so deferential; it is de novo.  [Citation.]  Thus, a decision under section 1181, subdivision 6, may be overturned on appeal when it is based on an error of law, as distinguished from a reweighing of conflicting evidence."

In denying the motion for a new trial or for the reduction of defendant's conviction to voluntary manslaughter, the trial court initially stated it was surprised by the jury's verdict.  However, it ultimately concluded that even under its obligation "to evaluate the facts again," the court could not say that it would have reached a different result than the jury.  Our review discloses no abuse of discretion or error of law.

"The essence of the sudden quarrel/heat of passion voluntary manslaughter is that the killer is so provoked by acts of the victim that he strikes out in the heat of passion, an emotion that obliterates reason that would prevail in the mind of a reasonable person.  That circumstance negates malice aforethought, and reduces the crime from second degree murder, which otherwise would be its classification."

Heat of passion has an objective and a subjective component.

To satisfy the objective component, the passion "'must be such a passion as would naturally be aroused in the mind of an ordinarily reasonable person under the given facts and circumstances,' because 'no defendant may set up his own standard of conduct and justify or excuse himself because in fact his passions were aroused, unless further the jury believe that the facts and circumstances were sufficient to arouse the passions of the ordinarily reasonable man.' [Citation.]"

Accordingly, "'the accused's heat of passion must be due to "sufficient provocation."'' [Citation.]"  Furthermore, "[t]he provocation which incites the defendant to homicidal conduct in the heat of passion must be caused by the victim [citation], or be conduct reasonably believed by the defendant to have been engaged in by the victim."  And "the killing must be 'upon a sudden quarrel or heat of passion' (§ 192); that is, 'suddenly as a response to the provocation, and not belatedly as revenge or punishment.  Hence, the rule is that, if sufficient time has elapsed for the passions of an ordinarily reasonable person to cool, the killing is murder, not manslaughter.' [Citation.]"  Even a brief lapse of time between the provocation and the killing can be enough to preclude a heat of passion defense.

As for heat of passion's subjective component, "[t]he defendant must actually, subjectively, kill under the heat of passion."  In other words, the defendant must

be under the actual influence of a strong passion at the time of the homicide, which includes any "'[v]iolent, intense, high-wrought, or enthusiastic emotion.'"

Both "'provocation *and* heat of passion must be affirmatively demonstrated.' [Citations.]"  "It is not enough that provocation alone be demonstrated.  There must also be evidence from which it can be inferred that the defendant's reason was in fact obscured by passion at the time of the act."  Whether defendant's reason was obscured by heat of passion is a question of fact for the jury.

At first blush, defendant's killing of the victim appears to present a classic heat of passion killing.  According to witnesses, the victim looked like a "Tasmanian Devil" as he was "beating the fuck out of" defendant.  While trapped inside his car, defendant suffered violent blows to his head, causing injuries to his eye and face sufficient for a physician to be concerned about inter-cranial bleeding.  This was enough to establish provocation sufficient to arouse the passions of a reasonable man.  Furthermore, defendant shot the victim within 15 to 20 seconds after Brower pulled the victim off of defendant, which is not much time for a reasonable person's passions to have cooled.

Assuming that this was sufficient to establish the objective component of heat of passion as a matter of law, the same is not true with respect to the requisite subjective component, i.e., that defendant *actually* was acting under a heat of passion.

Defendant did not testify and, hence, did not directly explain his mental state at the time of the shooting.  Moreover, none of the witnesses described defendant as acting under the sway of a highly wrought emotion.  According to Bhandal, when the victim initially slapped defendant, defendant said nothing.  And when Brower pulled the victim off of defendant, defendant acted "lifeless."  In addition, White testified that defendant said nothing to the victim before shooting him, and her description of the manner in which defendant shot the victim suggests that defendant was acting in a controlled fashion.  Other evidence at trial portrayed defendant as an unusually calm person; one who did not even react when Mukhtiar twisted his hand behind his back or when he was verbally harangued at the Bains's home.  Although minimal time elapsed between the beating and the shooting, in the interim, Bower had come to defendant's rescue, the victim was now eight feet away from the car and no longer an imminent threat, and defendant simply could have locked the car doors or possibly driven away.  Instead of doing so, he chose to shoot the victim, and there is no evidence *compelling* the conclusion that defendant's reason and judgment necessarily were obliterated at the time of the shooting.

> We cannot say that, *as a matter of law,* defendant killed the victim in a heat of passion, as opposed to making a calculated decision to shoot the victim in revenge for the humiliation that defendant had suffered at the hands of the victim and his family.  Consequently, the trial court did not abuse its discretion in denying defendant's motion for a new trial or to reduce his murder conviction to voluntary manslaughter.[31]

First, as under California law, the grant or denial of a new trial under the Federal Rules of Criminal Procedure is reviewed under an abuse of discretion standard.[32]  Thus, the application of the abuse of discretion standard by the California Court of Appeal does not present a federal constitutional issue.  Cast correctly, Singh's argument is that there was insufficient evidence to convict him of second-degree murder.  Under *Jackson*,[33] the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[34]  This Court must, therefore, determine whether the decision of the California Court of Appeal on the merits unreasonably applied *Jackson*.

Singh misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction.  As noted above, it is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[35]  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it

---

[31] *Singh*, 2005 WL 1995548 at *6–8 (footnote and citations omitted) (emphasis in the original).

[32] *See United States v. Sarno,* 73 F.3d 1470, 1507 (9th Cir. 1995) (citing *United States v. Sitton,* 968 F.2d 947, 958-59 (9th Cir. 1992).

[33] *Jackson v. Virginia*, 443 U.S. 307 (1979).

[34] *Id.* at 319 (emphasis in the original).

[35] *See Engle*, 456 U.S. at 128.

must undertake its inquiry by reference to the elements of the crime as set forth in state law.[36] This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses.  Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction of the crime as prescribed by state law.[37]  That such evidence exists is clearly established by the record in this case.  Singh bears the burden of establishing by clear and convincing evidence that the factual findings of the jury were erroneous; a burden he has failed to carry.  Here, the California Court of Appeal, a state court, found that there was sufficient evidence to support conviction of the crimes under state law.  Review of that decision is beyond the purview of this Court in a federal habeas proceeding.

California law requires both an objective and a subjective element for heat of passion. Here the California courts found that the objective element was clearly established.  Further, the court found that a jury acting properly could have found the subjective element.  The sufficiency of the evidence issue turns on whether the jury was compelled to find that defendant subjectively acted from heat of passion.  There was no direct evidence that he did:  Singh did not testify and the eye witnesses described him as calm and "lifeless."  Thus, Singh's argument turns on circumstantial evidence.  He asks this Court to find that, given the victim's violent assault, no person could be so cold-blooded as to kill, except in heat of passion.  More accurately, in such a situation a jury must have had a reasonable doubt.  Absent other evidence of Singh's passionate

---

[36] *Jackson*, 443 U.S. at 324 n.16.

[37] *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).

character, a jury could find on this record that Singh acted in cold blood for revenge and not as the result of being overwhelmed by passion.

Accordingly, this Court cannot say, on the record before it, that the decision of the California Court of Appeal "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[38] Singh is not entitled to relief under his second ground.

Ground 3: Imposition of Stayed Firearm Enhancement Sentence (*Apprendi* Violation).

Singh argues that the imposition of the fire-arm enhancement was based upon facts not found to be true by the jury in violation of *Apprendi*.[39] The trial court did not state its reasons for imposing the upper term on the firearm enhancement. The California Court of Appeal assumed that the trial court relied upon the purported aggravating factors set forth in the probation report: "(1) the crime involved great violence, great harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness; (2) defendant was armed with a weapon; (3) the victim was vulnerable due to being restrained by a third party; and (4) the way in which the crime was carried out demonstrated criminal sophistication or professionalism on defendant's part."[40] After determining that, under California law, the enhancement could not be based upon the fact Singh

---

[38] 28 U.S.C. § 2254(d).

[39] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

[40] *Singh*, 2005 WL 1995548 at *9.

MEMORANDUM DECISION
*Singh v. Curry*, 2:08-cv-00211-JKS                    15

was armed with a weapon, the one fact submitted to the jury, the Court of Appeal, following the decision of the California Supreme Court in *Black*,[41] rejected Singh's argument.[42]

In this case, the decision of the Court of Appeal by following *Black* was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States."[43]  The Ninth Circuit has held that where, as here, a federal habeas petitioner's conviction became final after *Blakely*,[44] the overruling of *Black* by *Cunningham* is applied retroactively in federal habeas proceedings.[45]  In those cases where *Cunningham* applies, the appropriate procedure is to remand to the state trial court for resentencing on the firearm enhancement under California's reformed sentencing system.[46]

Respondent does not argue that no constitutional error occurred.  Instead, Respondent, without citation to authority or further explanation, contends that even if error occurred, it was harmless because imposition of the sentence was stayed.  *Apprendi*-type errors are reviewed under the harmless error standard.[47]  An error is harmless if the court finds beyond a reasonable

---

[41] *People v. Black*, 113 P.3d 534, 536, 543 (Cal. 2005), *overruled by Cunningham v. California*, 549 U.S. 270 (2007).

[42] *Singh*, 2005 WL 1995548 at *9–10.

[43] 28 U.S.C. § 2254(d)(1).

[44] *Blakely v. Washington*, 542 U.S. 296 (2004) (holding that the Sixth Amendment right to a jury trial prohibits judges from enhancing criminal sentences beyond the statutory maximum based on facts other than those decided by the jury or admitted by the defendant).

[45] *Butler v. Curry*, 528 F.3d 624, 639 (9th Cir. 2008).

[46] *Chioino v. Kernan*, 581 F.3d 1182, 1185–86 (9th Cir. 2009).

[47] *Washington v. Recuenco*, 548 U.S. 212, 220–22 (2006); *Neder v. United States*, 527 U.S. 1, 17–19 (1999); *United States v. Zepeda-Martinez*, 470 F.3d 909, 913–14 (9th Cir. 2006).

doubt that the result "would have been the same absent the error."[48]   The Supreme Court explained that where the record contains "overwhelming" and "uncontroverted" evidence supporting an element of the crime, the error is harmless.[49]   Under California law, which this Court must apply, only one aggravating factor need exist to impose the upper term.[50]   Although the California Court of Appeal assumed that the sentencing judge applied one of the aggravating factors permitted under California law, it did not identify or otherwise discuss which of those factors would apply in this case, or the evidentiary basis on which the sentencing judge might have relied in applying that factor.   Respondent does not argue that the sentencing judge could have applied one of the enumerated factors.

Reviewing the issue *de novo*, on the record before it, this Court looks to determine whether the overwhelming and uncontroverted evidence establishes the existence of one of the three other factors referred to by the California Court of Appeal.   There is no evidence that would support either the first or fourth factor:  that the crime involved great violence, great harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness, or the way in which the crime was carried out demonstrated criminal sophistication or professionalism on defendant's part.   This leaves the third possible aggravating factor, that "the victim was vulnerable due to being restrained by a third party."   The California Court of Appeal described the shooting in the following terms:

---

[48] *Neder,* 527 U.S. at 19.

[49] *Id.* at 17, 18.

[50] *Butler*, 528 F.3d at 643.

Brower grabbed the victim and pulled him off of defendant and out of the car. Defendant was lying prone on the seat and looked "kind of lifeless." The victim angrily told Brower that defendant had been "fucking [the victim's] wife." Brower took the victim four to eight feet away from defendant's car door and told him, "I don't care, call the cops."

While Brower and the victim were talking, defendant shot and killed the victim. Brower did not see defendant fire the fatal shot but did observe that at the time of the shooting, the victim was not approaching defendant's car, making any threatening gestures, or talking to defendant.[51]

The evidence that the victim was restrained at the time of the shooting is inconclusive.

Consequently, the imposition of the upper term cannot be upheld on the basis of any of the four

potential aggravating factors identified by the Court of Appeal.

This Court agrees with Respondent that it "may, in [its] discretion, refuse to entertain a

petition for a writ of habeas corpus should he feel that granting the writ will not significantly

affect the position of the petitioner."[52]   At first blush it may seem logical to say that, since that

sentence was stayed, it has no impact on Singh.  Respondent does not, however, explain why

staying the sentence under California law renders the error harmless.  If the imposition of a

stayed sentence has no adverse impact on a criminal defendant, then what purpose is served by

imposing it?  This Court cannot assume that the imposition of a stayed sentence does not serve

some legitimate penological purpose of the state.  Nor, without some indication of what that

potential impact might or might not be, can this Court hold that any potential adverse impact is

so speculative and uncertain as to be *de minimis*.

_____

[51] *Singh*, 2005 WL 1995548 at *2.

[52] *Van Geldern v. Field*, 498 F.2d 400, 403 (9th Cir. 1974); *see also* 28 U.S.C. § 2243 ("The court shall . . . dispose of the matter as law and justice require.").

While there is no burden of proof *per se* in a harmless error analysis, this Court nonetheless looks to the state to instill a fair assurance that the error had no substantial or prejudicial effect.[53]  Respondent has failed to shoulder this minimal burden.  Consequently, this Court concludes it is bound to follow the decision of the Court of Appeals for the Ninth Circuit in *Chioino*.  Consistent with *Chioino*, the writ will be granted on this ground and the matter will be remanded to the California trial court for resentencing on the firearm enhancement under California's reformed sentencing system.[54]

Ground 4:  Ineffective Assistance of Counsel.

Singh argues that his trial counsel was ineffective in two respects:  (1) by not fully informing him of the maximum sentence he faced if convicted; and (2) in using a non-court certified interpreter who had ties to the victim's family to translate when counsel was discussing the plea offer with him.  Singh presented these arguments in his habeas petitions to the California courts.  As noted above, the Sutter County Superior Court cursorily denied his petition for failure to establish a *prima facie* case for habeas relief, citing *In re Lawler*, 23 Cal 3d 190, 194.   The appellate courts denied the petitions presented to them without opinion or citation to authority.

When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain

---

[53] *See Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004).

[54] *People v. Sandoval*, 161 P.3d 1146 (Cal. 2007).

whether the state court decision was objectively unreasonable.[55]  The scope of this review is for

clear error of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state
> court's decision, we can view it through the "objectively reasonable" lens ground
> by *Williams*. . . . Federal habeas review is not *de novo* when the state court does
> not supply reasoning for its decision, but an independent review of the record is
> required to determine whether the state court clearly erred in its application of
> controlling federal law.  Only by that examination may we determine whether the
> state court's decision was objectively reasonable.[56]

"[A]lthough we independently review the record, we still defer to the state court's ultimate

decision."[57]

Although the use of court-certified interpreters is mandated by statute in federal criminal

proceedings,[58] the Supreme Court has not held that the use of court-certified interpreters is a

constitutional requirement.[59]  Thus, on this point, Singh does not raise a federal constitutional

issue cognizable on federal habeas review.  Singh has provided no evidentiary facts to support his

conclusory allegations that the interpreter had a close relationship to the victim's family.  More

---

[55] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[56] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[57] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

[58] *See United States v. Bailon-Santana*, 429 F.3d 1258, 1260–61 (9th Cir. 2005).

[59] This Court notes that the Ninth Circuit has held, with respect to a criminal defendant's Fifth Amendment rights, that the use of an interpreter is constitutionally required under certain circumstances.  *See United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994).  However, circuit precedent may not serve to create established federal law on an issue the Supreme Court has not yet addressed.  *Musladin,* 549 U.S. at 76-77; *Holley v. Yarborough*, 568 F.3d 1091, 1097 (9th Cir. 2009).

importantly, Singh has not alleged or proffered any evidence that the translation was not accurate.[60]

Singh did not include any affidavits or other evidence in support of the allegations in his petition to Sutter Superior Court.  In his petitions to the California Court of Appeal and California Supreme Court, as well as his Petition to this Court, Singh presents solely the short affidavit of the interpreter.  Under California procedure, a petition for habeas relief should both (1) "state fully and with particularity the facts upon which relief is sought"; and (2) "include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations."[61]  It does not appear from the petitions filed in the state courts that Singh requested an evidentiary hearing.  Nor are the petitions accompanied by supporting affidavits or declarations for those facts outside the record of the trial court.  Thus, it does not appear from the petitions presented to the California courts that Singh established a *prima facie* case entitling him to an evidentiary hearing under California procedural law.[62]

---

[60] The affidavit of the interpreter attached to the Petition does nothing more than establish the fact that the interpreter was not court-certified.  Indeed, the interpreter states that he translated the conversation from Punjabi to English and back accurately to the best of his ability.  Thus, the only evidence before this Court contradicts any indication of error, prejudice or bias in the translation.  Perhaps, more tellingly, the affidavit does not address Singh's allegations regarding the content of the conversation between Singh and his counsel.  Presumably, if the interpreter recalled the conversation as alleged by Singh, the interpreter's recollection would have been included in the affidavit.  If that had occurred there would have been a sufficient evidentiary base to warrant an evidentiary hearing in the state court.

[61] *People v. Duvall*, 886 P.2d 1252, 1258 (Cal. 1995); *see also In re Hawthorne*, 105 P.3d 552, 557 (Cal. 2005) (same).

[62] *See Duvall.*

Having failed to develop the factual basis for his ineffective assistance of counsel claim in the state courts, Singh is not entitled an evidentiary hearing in this Court unless he can establish:

(A) the claim relies on—

> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.[63]

This Singh has failed to establish.

Accordingly, this Court cannot say on the record before it that the assumed decisions of the California courts denying Singh's petitions for habeas corpus relief on the merits were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States at the time the state court rendered its decision or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[64]   Singh is not entitled to relief under his fourth ground.

## V.  CONCLUSION/ORDER

Except as to his third ground, Singh is not entitled to relief under any ground raised in the Petition.

**IT IS HEREBY ORDERED THAT** the request for an evidentiary hearing is **DENIED**.

---

[63] 28 U.S.C. § 2254(e)(2).

[64] 28 U.S.C. § 2254(d).

**IT IS FURTHER ORDERED THAT** the Petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **GRANTED** in part, and **DENIED** in part.

**IT IS FURTHER ORDERED THAT** this matter is remanded to the Superior Court in and for the County of Sutter for a resentencing hearing on the firearm enhancement (California Penal Code § 12022.5(a)) under California's reformed sentencing system as set forth in *People v. Sandoval*, 161 P.3d 1146 (Cal. 2007), within a reasonable time, not to exceed 90 days, after the judgment of this Court is no longer subject to direct review on appeal.

**IT IS FURTHER ORDERED THAT**, to the extent that the Petition is denied, the Court declines to issue a Certificate of Appealability.[65]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court to enter judgment accordingly.

Dated: January 13, 2010.

　　　　　　　　　　　　　　/s/ James K. Singleton, Jr.
　　　　　　　　　　　　　　JAMES K. SINGLETON, JR.
　　　　　　　　　　　　　　United States District Judge

---

[65] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks and citations omitted).